# JULY, 1936

## VILBIG BROTHERS V. CITY OF DALLAS ET AL.

No. 6940.   Decided March 4, 1936.
Rehearing overruled July 15, 1936.
(91 S. W., 2d Series, 336; 96 S. W., 2d Series, 229.)

564

*Claud C. Westerfeld*, of Dallas, for plaintiffs in error.

The requirement of competitive bidding in the letting of municipal contracts is uniformly construed as mandatory and jurisdictional, and non-observance will render contract void and unenforceable. Under such restrictions a fair opportunity must be given for fair competition. No scheme or device promotive of favoritism, or unfairness, or which enforces limitations not applicable to all bidders alike, will be tolerated. McQuillan, Mun. Corp., Suppl., Vol. 7, p. 7264, par. 1185; State v. Jersey City, 58 N. J. L., 262, 33 Atl., 740; Montague-O'Reilly Co. v. Milwaukee, 101 Ore., 478, 193 Pac., 827; Warren v. Boston, 181 Mass., 6, 62 N. E., 951.

*Bartlett, Thornton & Montgomery,* of Dallas, for defendants in error.

The fact that patented pavements were included in the types of pavement on which bids were invited, and that the bid of defendant in error, Uvalde Construction Company, on a patented pavement was accepted by the city, did not invalidate the contract or the assessment against plaintiffs in error on their property. Hoffman v. Muscatine, 212 Iowa, 867, 232 N. W., 430; 77 A. L. R., 680; Warren Bros. v. New York, 190 N. Y., 297, 83 N. E., 59; Campbell v. So. Bitulithic Co., 32 Ky. L. Rep., 799, 106 S. W., 1189.

MR. PRESIDING JUDGE RYAN delivered the opinion of the Commission of Appeals, Section B.

This litigation grew out of the paving of Sherman Street, between the south line of Williams Street and the south line of Eakin Street, in the City of Dallas, by the Uvalde Construction Company, under a contract between that company and the City of Dallas.

J. W. Vilbig and August Vilbig, owners of a block of land facing on said Sherman Street, brought this suit against the City of Dallas and the Uvalde Construction Company, to declare void a paving assessment claim and lien against their property, for a permanent injunction enjoining the defendants from attempting to collect same, and that said property be freed from any lien therefor.

The Uvalde Construction Company answered by a general and ninety-one special exceptions, general denial, and specially that the plaintiffs failed to bring suit to set aside or correct the ordinance levying the assessment, within twenty days thereafter, as provided by the city's charter; also that the plaintiffs knew prior to the beginning of the paving work that contract therefor had been awarded to the defendant construction company, notwithstanding which they stood by and permitted performance of the work and expenditure of large sums of money for labor and material, resulting in great benefit to said property and its use by plaintiffs who are therefore estopped from questioning the validity of the assessment proceedings.

The construction company by cross action, prayed recovery on the certificate of special assessment amounting to $2009.40 payable in equal installments, one within thirty days after May 27, 1931, and one each on or before from one to five years after said date, with interest at the rate of seven per cent per annum, payable annually, a reasonable attorney's fee for the

collection thereof, and foreclosure of lien on the property involved.

The City of Dallas answered by general demurrer, adopted its co-defendant's special exceptions to plaintiff's petition, and general denial, also adopted that portion of its co-defendant's answer as is applicable, and special plea, that acting under its charter authority it proceeded to improve the street in question stating generally the proceedings had.

The case was submitted to a jury on special issues, viz:

"Special Issue No. 1.

"Do you find from a preponderance of the evidence that the Uvalde Construction Company failed in the substantial performance of the contract to lay the paving on the street in question in accordance with the plans and specifications in question? Answer Yes or No.

"Answer: No."

"Special Issue No. 3.

"What sum of money, if any, do you find from a preponderance of the evidence is a reasonable attorney's fee for Uvalde Construction Company for its prosecution of this suit in the trial court?

"Answer in Dollars, if any, and cents, if any.

"Answer: $ Two Hundred & No/100 Dollars ($200.00)."

"Special Issue No. 4.

"What sum of money, if any, do you find from a preponderance of the evidence is a reasonable attorney's fee for Uvalde Construction Company for its prosecution of this suit in the appellate court?

"Answer in dollars, if any, and cents, if any:

"Answer: $ One Hundred Dollars ($100.00)."

Judgment was thereupon rendered in favor of the construction company for the amount of its claim, interest and attorney's fees, with foreclosure of lien, said judgment was affirmed by the Court of Civil Appeals, 80 S. W. (2d) 784.

OPINION.

In their petition for writ of error, plaintiffs in error say "the plaintiffs in error predicated their entire suit on the sole question that there was no competition in the awarding of the contract to pave Sherman Street in the City of Dallas, Texas."

The case was tried under the provisions of that city's charter (then in force) governing the making of street and sidewalk improvements and the assessment against abutting property owners, of certain costs thereof, which is complete within

itself (Art. X)—no contention being made that it is in conflict with any applicable general law on the subject; our consideration of the matters involved shall therefore be from the standpoint of the charter.

Said charter contains also the following provisions (Art. XIV, Sec. 42):

"No contract shall be entered into by the Board of Commissioners until after an appropriation has been made therefor, nor in excess of the amount appropriated, and all contracts shall be made upon specifications, * * *

"All contracts of whatever character, pertaining to public improvements, or the maintenance of public property of said city, involving an outlay of as much as five hundred ($500) dollars, shall be based upon the specifications to be prepared and submitted to and approved by the Board of Commissioners; and after approval by the Board of Commissioners, advertisement for the proposed work, or matters embraced in said proposed contract, shall be made, inviting competitive bids for the work proposed to be done, which said advertisement shall be published in a daily newspaper not less than five times. All bids submitted shall be sealed, shall be opened by the Mayor in the presence of a majority of the Board of Commissioners, and shall remain on file in the office of City Secretary and be open to the public inspection for at least forty-eight hours before any award of said work is made to any competitive bidder.

"The Board of Commissioners shall determine the most advantageous bid for the City, and shall enter into contract with the party submitting the lowest secure bid; and if, in the opinion of the Board of Commissioners, none of said bids are satisfactory, then the Board of Commissioners may have said work done by day labor, and a detailed statement of all such work done by day labor, showing the cost of same, shall be filed with the Board of Commissioners. Pending the advertisement of the work or contract proposed, specifications therefor shall be on file in the office of the City Secretary, subject to the inspection of all parties desiring to bid."

It is the insistence of plaintiffs in error that incorporation of the plans and specifications of patented articles for work to be done for the city and the advertisement for bids on such, negatives the existence of free competition in such bidding and is in violation of the above charter provision, and therefore void.

On October 20, 1930, the Board of Commissioners of the

City of Dallas, by resolution, directed the improvement of Sherman Street between the points named and directed that bids be taken for the construction of the work with each of the materials therein specified, and for concrete curbs, or curbs and gutters, the work to be done with the material and according to plans and methods selected by the Commissioners after bids are opened.

The bases upon which bids shall be taken are as follows:

(a)   6″ concrete base.

The paving for the surface upon which bids shall be taken are as follows:

(a)   2″ Warrenite Bitulithic;
(b)   2″ Valdilithic Improved Limestone Rock Asphalt;
(c)   2″ Willite Asphaltic Concrete;
(d)   2″ Uvalde County Rock Asphalt;
(e)   2″ Asphaltic Concrete.

The three first named were patented types of pavement covering the two inch topping. All types of paving on which bids were asked contemplated an eight inch pavement and the specifications were alike in all respects, except as to the two inch topping; the advertisement for proposals called for separate bids on said materials and according to the terms of the specifications, which included those of the respective patented surface paving, and with as well as without a maintenance bond as provided therein. The city reserved the right to reject any or all bids, and bidders were required to state the time required to complete the surface of the entire street from end to end, remove all debris therefrom and said street opened to traffic.

The bids were submitted on uniform printed blanks as follows: "The undersigned hereby propose to furnish all materials, tools and labor, and do all work required in paving said street, in a first class manner and in accordance with specifications and plans for same on file in the office of the City Engineer, at the following prices:"—then follow in details the various items going to the completion of the work, the price to be stated as to each, such as price per cubic yard for excavated material, per square yard for concrete base under the surface paving, of a thickness of five and six inches respectively, the price per square yard for surface paving, etc.

Each bidder in this case filled out the prices on each item in his bid.

■ The city thus had the choice, after receipt of bids, of selecting in good faith, from different kinds of surface paving,

patented or unpatented, and we think it had the right to separate the work and accept one bid for the excavating and concrete base, and another bid for the surface, if in the honest judgment of its governing body, that course be best for the public interests.

Full discretion, as above stated, is allowed by the terms of the city's charter, which are very broad, on the subject.

Art. X, Sec. 1 of the city's charter provided as follows:

"The term 'Street Improvements' as embraced in this article shall include the improvement of any street, * * * or any portion thereof, within the city, by filling, grading, raising, macadamizing, paving, repairing or otherwise improving the same * * *

"(e) The Board of Commissioners shall have power, by resolution, to order the making of the public improvements mentioned in this article, or any of them * * *. Such resolution shall, in general terms, set forth the nature and extent of the improvements or improvement to be made, * * *. Such resolution may specify that said improvements may, at the election of the Commissioners be constructed from different materials, and may specify different or alternative methods of making such improvements and provide for the payment of the costs thereof.

"Upon the passage of such resolution it shall be the duty of the City Engineer to forthwith prepare specifications for the said improvement, which shall embrace the different materials or different plans or methods, under which the said improvements or part thereof, may be constructed or paid for, * * *. The Board of Commissioners shall have power to require of the contractor or contractors to whom the work may be let, a bond for the faithful performance of the contract, and also for the maintenance of the work in good condition at the cost of the contractor for a term not more than five years from the completion thereof, * * *.

"When specifications have been adopted by the Board of Commissioners it shall be the duty of the City Secretary, or such other officer as may be designated by the Board to at once advertise for sealed bids for the construction of such improvements in accordance with the specifications. * * * The Board of Commissioners shall have the right to accept such bids as it shall deem most advantageous to the city and the owners of the property abutting upon the public highway named to be improved or may reject any and all bids; and where an improvement is ordered, upon different specifications,

or for the construction of work, or part thereof, with different materials or under different plans or methods of construction or payment for such improvement, the board shall have power after opening bids, to select such methods, plans or material for making said improvements, or any part thereof, as it may deem best, and to let the work to such bidder and upon such bids as it may select. * * *

"(f) When bids for such improvements have been accepted by the Board of Commissioners, the city shall enter into contract with the contractor or contractors to whom the work has been let for the performance thereof, * * *."

It will therefore be seen that the specifications may provide for the improvements to be constructed from different materials and different or alternative methods, the Board of Commissioners having the right to select such methods, plans or materials it deems best and most advantageous to the city and abutting property owners, a matter of discretion, which when honestly and fairly exercised, should not be overturned. This is not in conflict with Art. XIV, Sec. 42, requiring competitive bids, because it is there also provided that the Board of Commissioners after receiving bids "shall determine the most advantageous one for the city and enter into contract with the party, submitting the lowest secure bid," which of course must be from the viewpoint of what is most advantageous for the city.

■ One type or character of pavement may be more suitable for one section of the city than another, taking into consideration the volume and class of traffic therein—the discretion to select which is, as stated above, confided to the Board of Commissioners. 3 McQuillin Munic. Corp., p. 2700, Sec. 1238; Id., 2d Ed., Vol. 3, p. 926, Sec. 1340.

The contention that a requirement of the charter or statute that municipal contracts be let on competitive bids precludes specifying a patented article or process has provoked a conflict in the authorities, on the subject.

■ Provision that public construction contracts, when required either by general statute or city charter, be under competitive bids, is mandatory, has been held in Breath v. City of Galveston, 92 Texas, 454, 49 S. W., 575; Kelly v. Cochran County (Com. App.), 82 S. W. (2d) 641; Bush v. City of Denton, 284 S. W., 251 (writ of error refused). In Limestone Co. v. Knox, 234 S. W., 131 (Civ. App.), it was held that bidding is required where possible, though the article be patented and is to

be tested before acceptance. Exceptions are made in cases of public calamity, contracts for personal or for professional services and for work paid for by the day as the work progresses. Tackett v. Middleton (Com. App.), 280 S. W., 563, 44 A. L. R., 1143; Gulf Bitulithic Co. v. Nueces County (Com. App.), 11 S. W. (2d) 305; 34 Tex. Jur., p. 733.

■ Two forms of competition may exist. One is secured by calling for bids on only one kind of material for the work, which is a competition among bidders on the same thing. The other is secured by calling for bids on several kinds of material, any one of which is suitable for the work; this form brings bidders on different things in competition with each other. The latter kind of competition includes, it seems plain, the former. City of Baltimore v. Flack, 104 Md., 107, 64 Atl., 702; City of Baltimore v. Gahan, 104 Md., 145, 64 Atl., 716; Ex rel Cook v. Detroit, 26 Mich., 263.

The Dallas charter provides that bids may be advertised for, on specifications for different pavements, in which case the contract may be awarded to the bidder whose bid, after considering the qualities and merits of the competing pavements, as well as the amounts of the different bids, is determined by the proper officials to be most satisfactory, for that particular job, there being no provision of the Dallas charter requiring a selection of the kind of pavement to be absolutely made in advance of the time when bids are called for. 3 McQuillin Munic. Corp. (2d Ed.) sec. 1312.

■ We have concluded that there was a proper competition under the charter provisions, unless ipso facto a patented article or process may not be specified because destructive of competition in the fair and reasonable meaning of the word.

The conflict in authorities on this point seems irreconcilable. We think the modern and more reasonable rule is announced in 3 McQuillin Munic. Corp. (2d Ed.) sec. 1299 (after collating the authorities) as follows:

"Although the power to specify a patented article or process under laws requiring competitive bidding is denied, as a general proposition, in a number of jurisdictions, the broad proposition that a patented article or process may be specified under the requirement of competitive bidding is generally sustained and this appears to be the better rule. Therefore, it is generally held that if all the competition is permitted of which the situation allows, a patented article or process may be specified."

As said in Hobart v. Detroit, 17 Mich., 246, 97 Am. Dec., 185, a municipality should not be precluded from making use of new and valuable inventions best subserving the public interest.

"The true reason, it is submitted, for the rule upholding municipal authorities in specifying patented material or articles is that to hold otherwise would defeat the very purpose of the legislative provisions requiring contracts to be let to the lowest responsible bidder after advertisement. The purpose of these provisions is to protect the public interests. They do this by requiring bids to be advertised for and the contract to be let to the lowest and best, or lowest responsible, bidder. But this specific requirement is only incidental to the main purpose of protecting the public interests by securing the best advantages in the way of material and supplies at the lowest practical price. The authorities may, however, protect the interests of the municipality by refusing to contract for the thing patented if the price asked therefor is unreasonable or prohibitive, and if there is any fraud practiced it will vitiate the contract the same as it will a contract for an unpatented article. Consequently in promoting and protecting the best interests of the municipality, it is necessary that the corporate authorities be permitted to specify patented materials or articles (when it is clearly to the public interest to do so) after carefully considering the serviceability and cost of the material or article for which the contract is made. Then, too, it cannot be presumed that a provision to secure competitive bidding was intended to apply where competitive bidding on the thing required is impossible." 3 McQuillin Munc. Corp. (2d Ed.) p. 874, sec. 1299.

Plaintiffs in error alleged a conspiracy between the city and the paving companies to prevent competition in bidding; after asking an instructed verdict they requested a special issue submitting that question to the jury, which the trial court refused.

The Court of Civil Appeals correctly held the evidence not sufficient to require such submission.

That court held also that the question could be raised only in a timely suit to question the assessment, meaning, evidently, in accordance with its further holding that the other questions in the case as enumerated above should have been raised at the hearing before the Board of Commissioners and presented by a suit filed within at least twenty days from the conclusion of said hearing, under authority of Art. 1096, Rev. Stat., 1925.

These holdings were unnecessary, in view of our disposition of the case, on the other grounds stated above, and we express no opinion thereon.

The judgments of the Court of Civil Appeals and trial court are affirmed.

Opinion adopted by the Supreme Court March 4, 1936.

### ON REHEARING.

PER CURIAM.—The original opinion in this cause is by Section B of the Commission. It is published in 91 S. W. (2d) 336 (ante, p. 563). We refer to that opinion for a statement of the case.

It appears from the record that the City of Dallas is a municipal corporation, operating as a home rule city under a charter duly adopted. The City determined to pave Sherman Street, located therein. The specifications for such paving called for a six-inch concrete base. All bidders bid on exactly the same thing in this regard.

The specifications called for a two-inch surface to be placed on the above concrete base. According to such specifications bidders were permitted to bid on five different surfacing materials. It is shown that the first three were patented. For the purposes of this opinion we will conclude that each of the three was owned and controlled by a monopoly, created by the patent, and that only the owner of such patent could bid thereon. The fourth surfacing material was "Uvalde County Rock Asphalt." We do not understand that such material was patented, but for the purposes of this opinion we will conclude that it was a monopoly, because the source of supply was owned and controlled by one concern. The fifth surfacing material specified was not patented, and its source of supply was not owned or controlled by one concern. Any person or concern could manufacture and use it. It further appears from the record that the contract was let to Uvalde Construction Company. It had bid on the "Uvalde County Rock Asphalt" surfacing, and was the only concern bidding on that material. Other concerns did bid on the other surfacing materials specified. The City authorities, in good faith, determined that the bid of the Uvalde Construction Company was the lowest and best bid.

The charter of the City provides:

"No contract shall be entered into by the Board of Commissioners until after an appropriation has been made there-

for, nor in excess of the amount appropriated, and all contracts shall be made upon specifications, * * *

"All contracts of whatever character, pertaining to public improvements, or the maintenance of public property of said city, involving an outlay of as much as five hundred ($500) dollars, shall be based upon the specifications to be prepared and submitted to and approved by the Board of Commissioners; and after approval by the Board of Commissioners, advertisement for the proposed work, or matters embraced in said proposed contract, shall be made, inviting competitive bids for the work proposed to be done, which said advertisement shall be published in a daily newspaper not less than five times. All bids submitted shall be sealed, shall be opened by the Mayor in the presence of a majority of the Board of Commissioners, and shall remain on file in the office of City Secretary and be open to the public inspection for at least forty-eight hours before any award of said work is made to any competitive bidder.

"The Board of Commissioners shall determine the most advantageous bid for the City, and shall enter into contract with the party submitting the lowest secure bid; and if, in the opinion of the Board of Commissioners, none of said bids are satisfactory, then the Board of Commissioners may have said work done by day labor, and a detailed statement of all such work done by day labor, showing the cost of same, shall be filed with the Board of Commissioners. Pending the advertisement of the work or contract proposed, specifications therefor shall be on file in the office of the City Secretary, subject to the inspection of all parties desiring to bid."

Under the above record and charter provision, the Vilbigs, who owned property abutting on the street in question, against which part of the cost of this paving was assessed, contend that the contract to have Sherman Street paved was utterly void, because the specifications contain patented materials for the surfacing. In this regard the motion for rehearing in this Court contains the following propositions:

## "FIRST PROPOSITION:

"There can be no competition under a contract where the city incorporates the plans and specifications covering patented materials and requests the owners of said patented material to bid on their own specifications.

## "SECOND PROPOSITION:

"There can be no competitive bidding on a public contract

where the city incorporates the plans and specifications covering the material, in that there is lacking any common standard or basis, and there is no way of determining which is the lowest bidder, because all were bidding on different materials.

"THIRD PROPOSITION:

"The incorporation of the plans and specifications of patented materials for work to be done for the City and the advertisement for bids on such, negatives the existence of free competition in such bidding and prevents and tends to prevent competition."

It will be noted that the above-quoted charter provision requires that contracts such as this be made upon specifications and competitive bids. But there is no express provision prohibiting the specification of patented articles. Much has been written on the right of a city to purchase patented articles under statutes or charter provisions such as this. In regard to such matters the courts of this country are in hopeless conflict. 44 C. J., p. 103.

■ The contract here involved, considered in the light of the facts of this case, does not call for an extensive discussion of the question of the right to .specify patented articles. It is our opinion that the specifications, supra, fairly and substantially meet the requirements of the charter provisions, supra, in the respect under discussion. The contract here sought to be annulled is therefore not void; in fact, it is not even voidable. It is true that it permitted bids on three patented articles. It is also true that it permitted bids on one article controlled by one concern. On the other hand, it permitted bids on one article which all could use and bid on. Regardless of all this, the specifications carefully preserved full and fair competition as between bidders offering different types of surfacing materials. The bidders on the patented materials were in full competition with each other and with the bidders on the unpatented material. Also, the bidders on the nonpatented material were in full competition with the bidders on the patented materials. The City reserved the power to accept or reject all bids, and there is no evidence showing, or tending to show, that this power was not fairly exercised. To our minds, the specifications here involved, when viewed in the light of this entire record, not only did not stifle competition, but tended to stimulate the same. To say that the City under the above charter provision must specify one particular nonpatented material, or must specify only nonpatented materials, and abso-

lutely exclude all that are patented, would exclude all bidders that would use patented materials only, and would, therefore, circumscribe the field of bidders; and discourage, rather than encourage, competition. The prime purpose of the charter provision, supra,. providing for specifications and competitive bids, is to stimulate competition among prospective contractors, and thus enable the City to secure the very best contract possible. To outlaw specifications such as this would not only have a tendency to retard competition, but would deprive the City, in many instances, of the right to use valuable patented articles.

Finally, we wish to say that we are not here attempting to fully define the powers of the City, under the above charter provision, to specify patented articles. The facts and issues of this case do not justify us in doing so. We simply hold that the specifications here involved, when viewed in the light of the end sought to be attained, and the other facts and circumstances already detailed, show a substantial compliance with the "specifications" requirements of the above charter provision. Of course we do not hold, or even intimate, that there existed any positive duty on the part of the City to specify patented articles in this instance. We simply hold that in the manner this was done, the charter provision under discussion was not violated.

We have carefully considered the other grounds of error urged in the motion for rehearing, and in our opinion they present no reversible error. The motion for rehearing is overruled.

Opinion delivered July 15, 1936.