

## Office of the Attorney General
### State of Texas

**DAN MORALES**
ATTORNEY GENERAL

May 4, 1992

Honorable Tom Craddick
Chairman
Public Health Committee
Texas House of Representatives
P. O. Box 2910
Austin, Texas 78768-2910

Opinion No. DM-113

Re: Whether the Dallas Independent School District may give favored treatment to bidders based on the bidder's residence, ownership of taxable improvements to real property in the district, and related questions (RQ-40)

Dear Representative Craddick:

You ask several questions arising from the implementation of the "Tax Base Enhancement Policy" of the Dallas Independent School District (DISD). You inform us that in September of 1990 the board of trustees of the DISD adopted changes in the district's procurement procedures designed to implement a tax base enhancement policy, the overall purpose of which was to lessen the burden of its taxpayers for the expense of operating the district. According to the board agenda item proposing the policy, the increased cost of operating the district and an eroding tax base made it "necessary to protect and encourage the development of businesses within the DISD boundaries." The agenda posting also states that tax base enhancements incorporated into the purchasing policies will stimulate competition, prevent favoritism, and gain for the district the best work and materials at the lowest "practicable" price.

The September 1990 revisions to the DISD purchasing policies incorporate a numerical scoring system based on an index of various criteria. A bidder's tally under the scoring system is factored into the determination of the bidder's responsibility. As we understand the policies, they are not used to limit or restrict the solicitation or submission of bids. Rather, they are used to screen bids submitted in response to published notifications of upcoming contract awards. The

p. 571

purchasing policies require the district, when evaluating a bidder's "responsibility,"[1] to consider several conventional factors such as price, contract terms, delivery dates, life-cycle costs, quality of materials, safety, past performance of the vendor or product, good business practices, transportation charges, and conformance to applicable local, state, and federal ordinances, laws, or regulations. They also require consideration of several additional criteria, including

> (1) the location or residence of the bidder;
>
> (2) the bidder's compliance with the district's Minority and Women Business Enterprise Contracting and Purchasing Program (M/WBE);
>
> (3) the bidder's involvement with DISD schools; and
>
> (4) the "tax base enhancement points" earned by the prospective bidder.

These four additional criteria are the focus of your inquiry.

Prior to consideration of a bid, the district asks all prospective bidders to submit data reflecting the enumerated factors. Points are awarded on the basis of residence, with the greatest number of points awarded to bidders who own or lease facilities within the district or maintain their principal place of business within the district.

Points are also awarded on the basis of a bidder's compliance with the district's M/WBE program. The M/WBE program applies to contracts of $25,000 or more, and its overall goal is to achieve minority and women business enterprise participation in at least 25 percent of the total dollar value of DISD contracts. The purchasing policies award "Good Faith Effort Points" in proportion to a bidder's percentage of M/WBE participation, with greater points awarded the closer the 25 percent goal is reached.

---

[1]The concept of "responsibility" in the context of competitive bidding is a focal point of your opinion request and is discussed at length later in this opinion.

Bidders may accumulate "Cooperative Effort Points" by participating in various voluntary school-related activities such as the DISD Adopt-A-School Program, tutoring program and volunteer program. Additional points are granted to bidders who provide direct assistance to the district and its students such as donations, scholarships, or employment opportunities.

Under the purchasing policy, the foregoing factors "shall" be taken into account for all bids that are no more than five percent higher than the lowest monetary bid. In addition, prospective bidders are assigned "tax base enhancement points" based on estimates of taxes to be paid to the district, the number of local jobs created, and the total amount of local salaries and wages the bidder claims to have annually paid.

You advise that the district reserves the right to award a contract covered by this policy to a bidder who has not submitted the lowest monetary bid but has accumulated the greatest number of points under the scoring system. You also advise that a contract for the construction of an elementary school was recently awarded by the DISD to the bidder submitting the fifth lowest monetary bid on the basis of this policy. You state that the successful bidder had accumulated only one point more than the low monetary bidder.

You ask a number of questions about these policies. Your first three questions ask whether a governmental entity that is subject to the competitive bidding requirement of subchapter B of chapter 271 of the Local Government Code may award a contract for the construction of a public work to a bidder who does not submit the lowest monetary bid on the basis of

> (1) a general preference for bidders who are located within the geographic boundaries of the entity;
>
> (2) a general preference for bidders who participate in voluntary programs of the entity; or
>
> (3) "tax base enhancement considerations" of vendor/contractor proximity, projected local employment opportunities, and projected local spending.

Your fourth question asks whether the DISD M/WBE program violates the Equal Protection Clause of the United States Constitution as interpreted in *City of*

*Richmond v. J. A. Croson Co.*, 488 U.S. 469 (1989). Your fifth question is whether a governmental entity such as DISD may award a construction contract to one who is not the lowest responsible bidder on the basis of a general preference for contractors providing greater minority participation or compliance with an M/WBE program. Your final question is whether the contract alluded to above is void for failure to comply with relevant competitive bidding requirements. Because your questions are centered on the practices of the DISD, we will limit our response to the laws applicable to independent school districts.

In response to your first three questions, we conclude that a school district may not condition the award of a construction contract subject to competitive bidding on the basis of the four additional criteria described above. We begin by noting that the tax base enhancement policy arguably was adopted pursuant to the general authority conferred on the DISD board of trustees by section 23.26 of the Education Code, which grants the trustees the exclusive power to manage and govern the public schools of the district and authority to adopt such rules, regulations, and by-laws as they deem proper. Educ. Code § 23.26(b), (d). This grant of authority is sufficient to include matters relating to procurement and construction contracting. *See Texas Roofing Co. v. Whiteside*, 385 S.W.2d 699 (Tex. Civ. App.--Amarillo 1965, writ ref'd n.r.e.); Attorney General Opinion M-950 (1971).

The authority to manage and govern the public schools is not absolute, however. A school board is limited to exercising those powers expressly conferred by law or necessarily implied from the express grant of power. *Texas Roofing Co. v. Whiteside, supra*. The board may also be limited by the Education Code or other laws and regulations. *See, e.g.*, Attorney General Opinion DM-14 (1991). With regard to construction contracts, school boards are bound by the rules set forth in section 21.901 of the Education Code and the procedures set forth in subchapter B of chapter 271 of the Local Government Code.

Section 21.901(a) of the Education Code requires school district construction contracts valued at $10,000 or more to be submitted to competitive bidding. Subsection (e) of section 21.901 authorizes a school board to dispense with competitive bidding when a school building or equipment is destroyed or severely damaged and the "board determines that the time delay posed by the competitive bidding process would prevent or substantially impair the conduct of classes or other essential school activities." The competitive bidding requirement does not apply to fees for professional services. Educ. Code § 21.901(c).

The Education Code does not prescribe specific procedures or guidelines for competitive bidding in the award of construction contracts by a school district. These matters are governed by subchapter B of chapter 271 of the Local Government Code, sections 271.021 through 271.030. Section 271.024 of the Local Government Code states that

> [i]f a governmental entity is required by statute to award a contract [in excess of $10,000] for the construction, repair, or renovation of a structure, ... or other improvement or addition to real property on the basis of competitive bids,

the bidding must be conducted in accordance with subchapter B. "Governmental entity" is defined to include independent school districts. Local Gov't Code § 271.021(2)(C).

Section 271.027(b) establishes the following standard for the awarding of school district construction contracts:

> The contract must be awarded to the *lowest responsible bidder*, but the contract may not be awarded to a bidder who is not the lowest bidder unless before the award each lower bidder is given notice of the proposed award and is given an opportunity to appear before the governing body of the governmental entity or the designated representative of the governing body and present evidence concerning the bidder's responsibility. (Emphasis added.)

As this language plainly provides, a school board is not required to award a contract to the bidder submitting the lowest monetary bid. The criterion that authorizes a school board to award a contract to a bidder who does not submit the lowest monetary bid is the prospective contractor's "responsibility." As previously noted, the DISD scoring system is predicated as a measurement of a bidder's responsibility. However, aside from a bidder's safety record, *id.* § 271.0275, subchapter B does not supply relevant benchmarks of responsibility. The answer to your first set of questions therefore will depend on whether the board possesses implied authority to examine the other factors that you inquire about. We conclude that a school board may not determine a bidder's responsibility on the basis of these factors.

The Texas Supreme Court has noted that the main purpose of competitive bidding is to secure for the taxpayers the best work and materials at the lowest practicable price. *Texas Highway Comm'n v. Texas Ass'n of Steel Importers*, 372 S.W.2d 525, 527 (Tex. 1963) (quoting *Sterrett v. Bell*, 240 S.W.2d 516, 520 (Tex. Civ. App.--Dallas 1951, no writ)). The requirement that public contracts be awarded to the lowest and best or lowest responsible bidder is merely intended to implement this policy and is incidental to it. *Vilbig Bros. v. City of Dallas*, 91 S.W.2d 336, 340 (Tex. 1936) (quoting with approval *Hobart v. Detroit*, 17 Mich. 246 (1868)).

Texas authorities provide scant guidance on the elements of responsibility in the competitive bidding context. One court has declared simply that the term "lowest responsible bidder" contemplates compliance with statutory requirements relating to competitive bidding. *Niles v. Harris County Fresh Water Supply Dist. No. 1A*, 336 S.W.2d 637 (Tex. Civ. App.--Waco 1960, writ ref'd). In another case the court indicated that a governmental body may, in awarding a contract to the lowest responsible bidder, take into account a bidder's experience, manpower, equipment, and supervisory requirements. *Corbin v. Collin County Comm'rs Court*, 651 S.W.2d 55 (Tex. App.--Dallas 1983, no writ). Authorities elsewhere indicate that responsibility may be measured by an inquiry into such things as the bidder's financial resources, business judgment, ability, efficiency, reliability, reputation, facilities, and capacity to perform the work required. *See* 1A C. ANTIEAU, MUNICIPAL CORPORATION LAW § 10.52 (1989); 4 C. ANTIEAU, COUNTY LAW § 39.08 (1990); 10 McQuillin, MUNICIPAL CORPORATIONS §§ 29.73.05 - 29.73.20 (3d ed. 1990); 64 AM. JUR. 2d *Public Works and Contracts* §§ 70, 71 (1972). Contracting authorities may also consider a bidder's performance on similar contracts and the quality of the goods or services proffered.[2] *Id.* All of these factors are intended to provide insight into a bidder's capacity to fulfill his pledge to the district -- that he will provide the solicited goods or services in accordance with advertised specifications at the cost quoted in the bid.

The DISD procurement policies incorporate many of these conventional factors, but the specific criteria you are concerned with do not. Because we find these specific criteria are not authorized by statute, we conclude that a school board may not incorporate them into its competitive bidding policies.

---

[2]Article 601b, V.T.C.S., which governs procurement by the state General Services Commission, expressly authorizes the commission, in determining who is the "lowest and best bidder," to consider similar factors in addition to price. *See* V.T.C.S. art. 601b, § 3.11(e)(1) - (10). This provision is inapplicable to school district construction contracts.

The courts conclude that the legislature, in enacting competitive bidding statutes, has determined that the government's interest in obtaining the best work or product at the lowest practicable price is secured by requiring maximum competition for government contracts. *Texas Ass'n of Steel Importers*, 372 S.W.2d at 527. A governmental body subject to a competitive bidding statute must act to promote the unmistakable legislative policy favoring unrestricted competition. *Id.* Only the legislature may vary this policy by enacting exceptions to competitive bidding. *See* Attorney General Opinion JM-712 (1987). A governmental body therefore may not adopt policies or issue bid solicitations or specifications that restrict competition unless such policies, solicitations, or specifications have a definite and objective relationship to matters of quality and competence or are adopted pursuant to clear legislative authority. *E.g.*, Attorney General Opinions JM-1213 (1990) (city may not require that contractors provide employees with basic health insurance benefits); MW-139 (1980) (county commissioners court may not adopt policy forbidding purchase of foreign automobiles by county); H-1219 (1978) (county may not restrict award of printing jobs to union printers); H-1086 (1977) (county may not restrict source of materials purchased under contract subject to competitive bidding); *see Texas Ass'n of Steel Importers*, 372 S.W.2d at 529.

In a similar vein, where a governmental body is prohibited from employing particular standards to limit or restrict the submission of bids, it may not use the same standards to make determinations of responsibility. *See* Attorney General Opinions JM-881 (1988); H-1086 (1977). The separate criteria adopted pursuant to the tax base enhancement policy in our opinion bear no apparent objective relationship to the quality of goods or services or the competence or capacity of the bidder to perform under a contract.

Turning to the specific procurement criteria, we first observe that subchapter B of chapter 271 does not authorize consideration of a bidder's residence or locale in making a contract award and, standing alone, residence is not a legitimate indicator of responsibility. In Attorney General Opinion H-1086 at 3, this office concluded that a county may not award a contract to one who is not the low bidder "on the sole basis that the said bidder is a local merchant or businessman." The opinion concluded that a contract award determined purely by a bidder's location within a county would, under the *Texas Ass'n of Steel Importers* standard, constitute an illegal restriction on competition. The DISD policies in question here confer an advantage to bidders purely on the basis of residence or proximity without requiring an individualized examination of the practical value of location under the contract vis-a-vis the ability of the bidder to perform under the contract. In this respect, the

policies are no different than the policy found objectionable in Attorney General Opinion H-1086.[3]

The same may be said with respect to the policy establishing a preference for bidders who participate in voluntary school programs. This policy essentially rewards those bidders who presumably have made positive contributions to the district and its students. We are also aware of no statutory authority that would permit DISD, when awarding contracts pursuant to competitive bidding, to consider either a bidder's compliance with the district's M/WBE program or contributions to the local economy such as those represented by the "tax base enhancement points." The conduct rewarded by these policies, though highly commendable, has no obvious relation to the responsibility of the bidder for purposes of competitive bidding under current law. Whether such conduct should be considered in the competitive bidding process is a matter that must be addressed by the legislature. This is precisely what the legislature did when it enacted section 6C(h) of V.T.C.S. article 1118x, which authorizes certain metropolitan rapid transit authorities to adopt programs designed to reasonably increase participation by minority business enterprises in public contract awards. *See also* Civ. Prac. & Rem. Code § 106.001(c)(2) (no general law or home-rule charter may be construed to prevent certain home-rule cities from adopting similar programs).

We further believe Texas courts would, in keeping with the *Texas Ass'n of Steel Importers* decision, find that without clear statutory authority a governmental body may not take a bidder's "social responsibility" into account when evaluating a bidder's responsibility or use the procurement process to remedy seemingly intractable social problems and promote general social policies, however laudable

---

[3]We note that section 271.901 of the Local Government Code, which applies to municipalities and districts that are required by law to award contracts on the basis of the "lowest and best bid," may provide a basis on which to reward resident bidders. In the event that identical bids are submitted on a contract, and only one of the bidders is a resident, "the municipality or district must select that bidder." Local Gov't Code § 271.901(b). The Texas Supreme Court has indicated that the "lowest and best bid" and "lowest responsible bidder" standards are essentially synonymous. *See Vilbig Bros.*, 91 S.W.2d at 340.

Attorney General Opinion H-1086 indicated that there might be circumstances in which the proximity of a bidder may be relevant to a determination of responsibility, but it did not describe any such circumstances. Clearly, if not based on section 271.901, any preference given to a bidder because of location or residence must be made case-by-case on an informed, nonarbitrary basis and must relate to the specific requirements of the contract.

or salutary those policies might be. *See generally Associated Gen. Contractors, Inc. v. City & County of San Francisco*, 813 F.2d 922, 925-27 (9th Cir. 1987) (notion of "responsibility" in competitive bidding does not encompass bidder's "social responsibility").[4]  Accordingly, because the criteria in question bear no evident objective relationship to a bidder's ability to perform under a contract or on the quality of his work, we must conclude that they are invalid measurements of responsibility under subchapter B of chapter 271 of the Local Government Code.  Your first three questions are answered in the negative.

Inasmuch as we believe the DISD does not possess sufficient statutory authority to award a contract on the basis of these criteria, we need not consider the constitutional issue posed in your fourth question.[5]  The preceding discussion also answers your fifth question insofar as it applies to school districts. Your sixth question, relating as it does to the actual award of a contract, requires the resolution of fact issues in addition to the legal question you ask.[6]  Fact questions cannot be resolved in the opinion process.

## S U M M A R Y

The board of trustees of an independent school district may not, in the absence of clear statutory authority, adopt procurement policies that reward bidders purely on the basis of a bidder's residence or location, the bidder's participation in

---

[4]In contrast, cases from a number of other jurisdictions specifically hold that a bidder's social responsibility is an appropriate consideration in public contract awards.  *See, e.g., Southwest Washington Chapter, Nat'l Elec. Contractors Ass'n v. Pierce County*, 667 P.2d 1092 (Wash. 1983) (and cases cited therein).  Were it not for the *Texas Ass'n of Steel Importers* decision, this office would be inclined to place greater emphasis on these decisions.  However, in light of *Texas Ass'n of Steel Importers* and the many opinions of this office following it, we are compelled to conclude that the legislature has not authorized school districts to account for a prospective contractor's social responsibility.

[5]This office has been supplied with arguments and evidence in support of the constitutionality of the DISD purchasing policies.  Without passing on the sufficiency of the arguments or evidence, we note that they demonstrate that the constitutional issue you raise requires the resolution of specific fact issues which this office cannot undertake in the opinion process.

[6]For example, the low bid in the situation you describe may have been rejected for reasons unrelated to the tax base enhancement policy, such as the failure of the bid to conform to advertised specifications, or a determination that the low bidder was not "responsible."

voluntary school programs, the bidder's compliance with the school district's minority and women business enterprise contracting program, or on the basis of estimates of various economic factors, such as taxes to be paid to the district by the bidder, the amount of local salaries and wages paid by the bidder, or the number of local jobs created by the bidder.

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Steve Aragón
Assistant Attorney General