(December 8, 1911.)

In re Application of EMMETT J. GEMMILL for Writ of Habeas Corpus.

[119 Pac. 298.]

CONSTITUTIONAL LAW—PUBLIC PRINTING—INTERSTATE COMMERCE—EQUAL PROTECTION OF THE LAW.

(Syllabus by the court.)

1. Sections 1475 and 1476 of the Rev. Codes, which require that state and county printing, binding and stationery work, shall be

done within the state and within the county where required for use, is not an interference with or regulation of commerce and is not repugnant to the commerce clause of sec. 8, art. 1, of the federal constitution.

2. Secs. 1475 and 1476, which provide that the printing, binding and stationery work shall be done within the state and the county in which it is to be used, does not interfere with or restrict the right of any person to freely contract, nor does it deny to any person the equal protection of the law and is not repugnant to the provisions of sec. 1 of the fourteenth amendment of the federal constitution.

3. Secs. 1475 and 1476, Rev. Codes, refer only to the work to be done in printing and binding and such work as is necessary to prepare paper, books and stationery for public use in the respective state and county offices, and have no reference to the purchase of the material itself upon which the work is done, and make no attempt to deprive any person of the right to sell to the state or county any material which may be needed for such public use. These sections of the statute, on the contrary, simply prescribe the locality or situs where certain work to be done for the people in their corporate and sovereign capacity shall be performed, and such statute is a constitutional exercise of the power of the legislature to prescribe by law the duties of state and county officers and to command them as to the manner in which they shall exercise certain powers in performing the business and proprietary duties of their respective offices.

4. Secs. 1475 and 1476, Rev. Codes, are not in violation of any public policy of this state, and cannot for that reason be held invalid and void, and with the business and economic wisdom and policy of such statute the courts have nothing to do.

Original application for writ of *habeas corpus*. Writ issued and return made thereto, and after hearing had thereon writ quashed and petitioner remanded to the custody of the sheriff.

George G. Pickett, for Petitioner.

"State discrimination against citizens of other states in respect to commercial transactions violates the right of equal privileges and immunities." (*Ward v. Maryland*, 79 U. S. (12 Wall.) 163, 20 L. ed. 260; *Welton v. Missouri*, 91 U. S. 275, 23 L. ed. 347; *Guy v. Baltimore*, 100 U. S. 434, 25 L. ed. 743.)

The statute is unconstitutional as depriving municipalities and those contracting therewith of the right to freely contract. .(*Treat v. Coler,* 166 N. Y. 144, 59 N. E. 776; *People v. Coler,* 166 N. Y. 1, 59 N. E. 716; *City of Cleveland v. Construction Co.,* 67 Ohio St. 197, 93 Am. St. 670, 65 N. E. 885, 59 L. R. A. 775; *Seattle v. Smyth,* 22 Wash. 327, 79 Am. St. 939, 60 Pac. 1120; *Lowe v. Rees Printing Co.,* 41 Neb. 127, 43 Am. St. 670, 59 N. W. 362, 24 L. R. A. 702; *In re Morgan,* 26 Colo. 415, 77 Am. St. 269, 58 Pac. 1071, 47 L. R. A. 52; *Ewen v. Thompson-Sterrett Co.,* 71 Misc. 171, 128 N. Y. Supp. 595; *People v. Hawkins,* 157 N. Y. 1, 68 Am. St. 736, 51 N. E. 257, 42 L. R. A. 490, and cases cited.)

The giving to one person or set of persons of a trade rights or privileges which another of the same trade does not get also, is a monopoly, and unconstitutional. (*Pirie v. Corporation of Dundas,* 29 U. C. Q. B. 407; *Slaughter-house Case,* 1 Wood, 21, Fed. Cas. No. 8408; *Norwich Gas Light Co. v. Norwich City G. Co.,* 25 Conn. 19; *City of Chicago v. Rumpff,* 45 Ill. 90, 92 Am. Dec. 196.)

Geo. W. Suppiger, County Attorney of Latah County, and Morgan & Morgan, for Defendant.

A state has the right in the discharge of its corporate functions to direct its officials and the officials of its subordinate political bodies to purchase supplies from whomsoever the legislature of the state may see fit. (*Tribune Printing & Binding Co. v. Barnes,* 7 N. D. 591, 75 N. W. 904.)

An examination of sections 1475, 1476 and 1476a, Rev. Codes, will disclose that no discrimination is made in favor of the citizens of Idaho or against the citizens of other states, and that the right to contract freely between the citizens of other states and Idaho is neither prohibited nor interfered with. A county is not a citizen of the state, but is a political subdivision of it.

AILSHIE, J.—The petitioner, Emmett J. Gemmill, was on the 26th day of September, 1911, held to answer before the district court on the charge of violating secs. 1475 and 1476

of the Rev. Codes. The charge preferred against the petitioner is that while he was acting as assessor and ex-officio tax collector of Latah county, and as such officer, he "did then and there wilfully and unlawfully obtain and have executed without the geographical boundaries of the said county of Latah, certain county printing, to wit: Tax sale certificates, blanks and duplicates thereof, for the county of Latah for the payment of which said county printing the said county of Latah then and there became responsible, and there being then and there within the said county of Latah practicable facilities for executing said printing." The petitioner applied to this court for a writ of *habeas corpus* directed to the sheriff of Latah county, and a writ was thereupon issued. Return was made justifying the detention of the petitioner, on the grounds above stated.

Counsel for petitioner insists that the statute under which this prosecution is had is unconstitutional and void, in that it violates the commerce clause of sec. 8 of art. 1 of the federal constitution, which authorizes Congress to regulate commerce between the states, and that it also violates sec. 1 of the fourteenth amendment to the federal constitution in that it denies to certain persons the equal protection of the law. Secs. 1475 and 1476 of the Rev. Codes, the consideration of which is involved in this proceeding, are as follows:

Sec. 1475: "All county printing, binding and stationery work, executed for or on behalf of the several counties throughout the state, for which the said counties contract, or become in any way responsible, shall be executed within the county for which said work is done, when there are practicable facilities within the said county for executing the same, but when it shall become necessary, from want of proper facilities, to execute the work without the said county, then the same shall be executed at some place within the state of Idaho, except as provided in the following section."

Sec. 1476: "Whenever it shall be established that any charge for printing, binding or stationery work is in excess of the charge usually made to private individuals for the same kind and quality of work, then the state or county

officer or officers having such work in charge shall have power to have such work done outside of said county or state, but nothing in this chapter shall be construed to oblige any of said officers to accept any unsatisfactory work."

Sec. 1476a provides that any city or county officer, either as an official member of a board or purchasing agent, who violates any of the provisions of secs. 1475 and 1476 shall be guilty of a misdemeanor, etc. This case has been argued principally upon the theory that the statute prohibits the letting of any contract for county printing to a nonresident of the state. This, however, is clearly not the purpose or intent of the statute. The statute has nothing to do with letting contracts to either residents or nonresidents of the state. All the state attempts to do is to require that certain work done for the several counties shall be actually executed within the confines of the county or state, as the case may be, and this is without any reference or regard to the person who may do such work. It will be noticed from a reading and analysis of the statute that it is not directed at the purchase of the material, that is, paper and material, but solely to the manual and mechanical work and labor in printing and binding books, stationery, etc., necessary for the several counties. It makes no difference whether the person who does the work is a resident of this state or has a place of business in this state, but the only test is that he shall have the work done within the county, or if it cannot be done in the county, then in the state if such work can be done within the state. It would be as much a violation of this statute for a citizen of the state, who owns and is operating a printing and job office within this state, to take a contract and have the work done outside the state, as it would be for an outsider to take the contract and have the work done outside the state. It would, on the other hand, be equally as lawful for a nonresident of the state to take such a contract and procure the work to be done within the county and state as if the contract was entered into with a resident who is operating a local office. In this view of the statute, we think there can be no element of interstate commerce entering into such a transaction, and the stat-

ute in no way interferes with interstate commerce or interstate transactions and is not repugnant to the commerce clause of the federal constitution.

The next and more serious consideration is: Does the foregoing statute in any way contravene that part of sec. 1 of the fourteenth amendment which ordains that no state shall "deprive any person of life, liberty or property without due process of law, nor deny any person within its jurisdiction the equal protection of the laws." It is argued that the statute is obnoxious to the foregoing provisions of the federal constitution, for the reason that it abridges the right to contract and deprives manufacturers, laborers and mechanics who are employed or engaged in business in other states from contracting with this state or any of the counties of the state doing printing and binding and stationery work for the state or the counties thereof. In support of this contention, counsel for petitioner cite *People v. Steele,* 231 Ill. 340, 121 Am. St. 321, 83 N. E. 236, 14 L. R. A., N. S., 361; *People v. Coler,* 166 N. Y. 144, 59 N. E. 776; *Marshall & Bruce Co. v. City of Nashville,* 109 Tenn. 495, 71 S. W. 815; *People v. Hawkins,* 157 N. Y. 1, 68 Am. St. 736, 51 N. E. 257, 42 L. R. A. 490.

*People v. Steele* was a case where defendant was convicted of a violation of a statute forbidding the speculation in theater tickets. The statute of Illinois, it seems, provided that the manager of a theater should cause to be printed on all tickets placed on sale the words, "This ticket cannot be sold for more than the price printed herein," and that the statute further prohibited the demanding or receiving for such ticket any price or sum in excess of the advertising price as printed on the ticket. The statute was evidently enacted to prevent brokers procuring tickets to theaters and other places of amusement and then selling them at a higher price than was charged for them when sold at the box office. The court held that such a statute was unconstitutional, in that it violated the personal and private rights of individuals to make contracts and to engage in business. That case is in no way parallel with the present case and throws no light on the subject here under consideration.

*People v. Coler* involved the validity and constitutionality of a statute of New York which prohibited the using for any municipal work within the state any stone that it was necessary to dress or carve for such use, unless the same had been prepared for use within the boundaries of that state, and also provided that a stipulation to that effect should be inserted in all municipal contracts for public buildings and public works. The court divided over the question. The majority held "that the statute was unconstitutional as depriving municipalities and those contracting therewith of the right to freely contract," and upon the further ground that it was "unconstitutional as in contravention of the federal constitution vesting in Congress the right to regulate interstate commerce." Chief Justice Parker dissented from the majority opinion, and the reasoning of the learned chief justice in that case appeals to us as much the sounder doctrine. The majority opinion proceeds on two theories: first, that the state legislature had no power or authority to direct the municipality as to the nature or character of the contract it should enter into or of the material it should furnish in any of its public works or of the place where such works should be done or performed, and that the municipal government was entirely independent of the state government in this respect. The other theory upon which the opinion proceeds is that since the statute undertakes to prohibit the city or any of its contractors from using stone carved in another state, the legislature was thereby interfering with the right to carry on commerce between the states. The chief justice in his dissenting opinion shows very clearly the fallacy in both of these theories. He says: "The statute does not attempt to interfere with the liberty of any citizen to have such stone as he may use cut and dressed where and by whom he shall choose. On the contrary, the statute is but an attempt on the part of a sovereign state to exercise the same function of choice in such regard as the constitution secures to the citizen."

*Marshall & Bruce Co. v. City of Nashville* was one of the numerous cases that have arisen in this country during recent years involving the constitutionality of statutes and city ordi-

nances requiring public printing and stationery to bear a union label of some of the allied trades council or typographical unions. The court held the ordinance violative of the provisions of sec. 1 of the fourteenth amendment to the federal constitution, in that it tended to deprive those not using the label from freely prosecuting their avocation in so far as public printing was concerned. It was also held in that case that such an ordinance was contrary to public policy.

*People v. Hawkins* is another New York case, and the majority opinion was written by the same judge (Mr. Justice O'Brien) who wrote the majority opinion in *People v. Coler.* Three of the justices, including Mr. Chief Justice Parker, dissented from that case. That was a case which involved the constitutionality of a statute in the state of New York, which required that all goods made by convict labor should before being sold or offered for sale within the state of New York be stamped or labeled with the words "convict made," and the statute made it a crime for anyone to sell or expose for sale any convict made goods within the state without the same being labeled as required by the statute. The majority of the court held that the statute was unconstitutional, for the reason that it was in conflict with the commerce clause of the federal constitution, and it was held invalid upon the further ground that it was an excessive and undue exercise of the police power of the state.

Several other cases have been cited by counsel for petitioner which hold to the same general effect as the cases above reviewed, but we have cited and reviewed the foregoing cases for the reason that they are the strongest cases that counsel has presented in support of his contention in the case at bar.

Counsel for the state have called our attention to the case of *Tribune Printing and Binding Co. v. Barnes,* 7 N. D. 591, 75 N. W. 904, as the only case they have found that is directly in point on the statute now under consideration. That was an application for a writ of mandate against the board of county commissioners of Cass county, North Dakota. The plaintiffs were doing business under the firm name and style

of the Tribune Printing and Binding Co. in the city of Minneapolis, Minn. The board of commissioners had advertised for bids to furnish the county with blank books, printed blanks and printed stationery, etc. The plaintiffs had presented a bid which the board of commissioners refused to consider on the grounds that the bidders were nonresidents and had their office and place of business beyond the confines of the state. The Tribune Co. sought by writ of mandate to compel the board to open and consider their bid. The statute of North Dakota which was under discussion provided as follows: "All county printing shall be done in the state, and, if practicable, in the county ordering the same." After considering and construing the statute itself, the court passed to the constitutional question and said:

"Again, it is argued that if section 1807, *supra*, is construed to prohibit county officials from procuring county supplies of printed matter from those who manufacture such supplies at places without the state, it would operate to violate section 8 of article 1 of the federal constitution, relating to commerce among the states. No authority is cited in support of this contention by counsel, and we are unaware of the existence of any such authority. Viewed as a question of principle, we are unable to see why the state is forbidden to do what an individual certainly may do with impunity, viz., elect from whom it will purchase supplies needed in the discharge of its corporate functions. If such election may lawfully be made, it certainly is competent for the state to direct its officials by a mandatory statute to procure their office supplies from those who produce the same within its own limits, it having elected to purchase none others either for the use of the state, as such, or for the use of subordinate political bodies within the state."

It will be noticed from the foregoing excerpt that the North Dakota court only considered the constitutional question in so far as the statute was supposed to run counter to the commerce clause of sec. 8, of art. 1, of the federal constitution, but did not consider the question as to whether the statute was in any manner violative of the fourteenth amendment.

We are unable to see wherein the statute in question violates any provision of the federal constitution. As we have above observed, it in no way involves interstate commerce. There is no attempt made to confine the purchase of material to residents or citizens of this state or to any class of persons. The officers charged with the duty of making purchases may purchase from nonresidents the same as from residents. The only requirement is that the work which shall be done on the material furnished, in order to especially adapt it to the uses for which it is purchased, must be done within the county if practicable, and if it cannot be done within the county, then within the state if it can be done in the state, otherwise wherever such work can be done. The officer or purchasing agent has no personal interest in the purchase or the labor to be done thereon. He is not called upon to pay the bill. He is acting only in an official and representative capacity. He receives his instructions from the law-making body of the state. The legislature is authorized by the constitution (sec. 6, art. 18) to prescribe the duties of county officers. It must be conceded that the legislature could not direct the officer as an individual where he should have printing done as a citizen for his private use. The legislature is speaking only for the sovereign. A statute of the kind and character of the one under consideration is not a public and general law in the ordinary sense of the term, in that it applies to all citizens and subjects of the state, but it is rather a general statute in the more limited sense that it directs the officers and agents of the state as to their duties in the discharge of certain of the *business and proprietary* interests of the whole people acting in their corporate capacity. The state is only a corporate name for all the citizens within certain territorial limits. The whole people acting as a public corporation have a right to enter into contracts and make purchases. In doing so, however, they must act through some agency. In this instance, they have chosen to act through the legislature which is the highest representative authority through which the people can act, and, so acting, they have directed their employees and purchasing agents as to where they shall have certain

public work performed. They have said by this statute that all "printing, binding and stationery work" done for the public shall be done within certain territorial limits. We do not see any more objection to this than might be urged to the legislature directing where a public building shall be erected, or where a public officer shall maintain his office for the transaction of the public business. No reasonable person would spend any time in arguing against the validity of a statute which specifies the location of a public building or the place where a public officer shall maintain his office and discharge the public business, yet it would be just as reasonable to say that the legislature cannot do this as it is to say that they cannot direct the public officer as to where he shall have certain work done in order to fit up and supply his office for the discharge of his public duties. The fact that the state requires its public buildings to be built within the confines of the state or that a county building be built within the territorial limits of the county is certainly no interference with the commerce clause of the federal constitution, nor is it any interference with the right of the citizens of the several states to contract, nor does it "deny to any person the equal protection of the law."

It has also been argued by counsel for petitioner that this statute is contrary to public policy and is calculated to encourage and establish a trust or monopoly in the matter of doing public printing and binding. There may be some foundation for this argument in so far as it has reference to the question of creating a trust or monopoly in this kind of work, and yet that possibility is rather remote and contingent. It is certainly not shown in this case to have attained such practical results as to furnish a basis on which a court could declare it void. On the other hand, there is nothing about the statute contrary to any principle of public policy that would justify a court in holding it void. To our minds the most objectionable feature to this statute, if it be objectionable at all, is on the side of public economy. It will be noticed that this statute does not require competitive bids and furnishes no method whereby the officer or purchas-

ing agent shall ascertain or be informed as to whether there are "practicable facilities" within the county for executing such work, or if not within the county then within the state, nor does the statute require that the work be let to the lowest bidder. In this respect our statute differs from the North Dakota statute. There the statute requires that the officers call for bids. While these may be potent reasons to urge before the legislature against the wisdom or expediency of such a statute, they are purely matters that address themselves to the law-making body rather than to the court. They do not go to the validity or constitutionality of the statute, but bear rather on the wisdom, economy and expediency of such legislation. Of course, in the condition in which we find this statute, it will be necessary upon a trial that proof be made as to the practicable facilities available for doing the work and the knowledge or means of knowledge that the officer had of such facilities, the good faith with which the officer acted and other similar questions which are left by the statute to the good faith and sound discretion of the officer making the contract.

The question has also been discussed as to the method of making proof whether there were practicable facilities within the county for executing the work, or if not within the county then within the state, and also as to the knowledge of the officer that the work would in fact be done outside the state rather than within the state. These are all questions going to the application and enforcement of the statute rather than its validity and are not questions that we would be justified in discussing at this time. We find no constitutional objection to the statute under consideration.

The writ will be quashed and the petitioner is hereby remanded to the custody of the sheriff of Latah county.

Stewart, C. J., concurs.

SULLIVAN, J., Dissenting.—I am unable to concur in the conclusion reached by the majority of the court. I think that the provisions of secs. 1475, 1476 and 1476a of the Re-

vised Codes were passed for the purpose of and do create a monopoly or trust in favor of the printing establishments of the state and are repugnant to the provisions of sec. 1, art. 14, of the constitution. It is well known that in most of the counties of the state there are not more than two newspapers published, and it is equally well known that many of the records required by the county officers cannot be printed by such printing establishments now in this state; that the printing of certain county records, if let to any printer in the state, is sublet to printing houses outside of the state where the work is done. Certain lithographic work is required in the preparation of certain of the records, and it is a fact that there is no person, firm or corporation that does lithographic work within this state. The witness, Yost, who testified on the preliminary examination, admitted that some of the books referred to in his testimony and used by the assessor could not be printed in Latah county. He is one of the owners of the "Star Mirror," a newspaper published at Moscow, and had certain printing for that county, and was asked on the preliminary examination whether exhibits "A" and "B," which were certain books required by the assessor, could be made in that county, and his answer was, "No, sir." He also testified that certain contracts that his firm got from the county were done by firms in Seattle, Portland or Spokane.

The federal constitution secures to the citizens of each state the privileges and immunities of the citizens of the United States, and prohibits any state from making or enforcing any law which shall abridge the privileges or immunities of the citizens of the United States. This section has reference in part to contracting and carrying on business. (Sec. 1, art. 14, of the Federal Const.; 8 Cyc. 1036, and cases there cited.)

It was held in *Ward v. Maryland,* 79 U. S. (12 Wall.) 163, 20 L. ed. 260, that state discrimination against citizens of other states in respect to commercial transactions violates the right of equal privileges and immunities. (*Welton v. Missouri,* 91 U. S. 275, 23 L. ed. 347; *Guy v. Baltimore,* 100 U. S. 434, 25 L. ed 743.)

In *Ex parte Case, ante,* p. 128, 116 Pac. 1037, this court held as follows:

"A state legislature by legislative enactment or otherwise has no authority to deprive a person of the right to labor at any legitimate business or to deny any person within the jurisdiction of the United States the equal protection of the laws or to prohibit a corporation that has a right to do business in the state to employ any person, whether alien or native, in the prosecution of any legitimate business." (See, also, *People v. Steele,* 231 Ill. 340, 121 Am. St. 321, 83 N. E. 236, 14 L. R. A., N. S., 361.)

In *People v. Coler,* 166 N. Y. 144, 59 N. E. 776, the court had under consideration the constitutionality of a statute of the state of New York which prohibited using in any municipal work within that state any stone that it was necessary to dress or carve for use unless the same had been prepared for use within the boundaries of the state, and held said statute unconstitutional and void. It was held that said statute was unconstitutional as depriving municipalities and those contracting therewith the right to freely contract. In the course of the opinion the court said:

"The citizens of this state have the right to enter the markets of every other state to sell their products, or to buy whatever they need, and all interference with the freedom of interstate commerce by state legislation is void. Under the constitution of the United States, business or commercial transactions cannot be hampered or circumscribed by state boundary lines, and that is the effect of the statute in question. We do not think it necessary to enter into any argument to establish these propositions, since the ground has been covered by the discussion in two recent cases in this court. · (*People v. Hawkins,* 157 N. Y. 1, 68 Am. St. 736, 51 N. E. 257, 42 L. R. A. 490; *Same v. Buffalo Fish Co.,* 164 N. Y. 93, 79 Am. St. 622, 58 N. E. 34, 52 L. R. A. 803.)"

In that case the legislature sought to create a monopoly or trust in favor of the stone-cutters in the state of New York.

Conceding, for the sake of the argument, that said sections are constitutional and valid, sec. 1475 provides that all county

printing, etc., shall be executed within the county for which said work is done when there are "practicable facilities" within said county for executing the same. Who is to determine that question? Of course, in the first instance the officer authorized to procure the printing to be done must do so, and if such officer determines that question according to his best judgment with honesty and good faith, he certainly is not criminally liable under the provisions of said sections. He is required to exercise his judgment in regard to letting the printing, and when he is about to let printing that cannot be done in the state, he certainly is not criminally liable for letting it to parties to be done outside of the state. Certain printing was let to a newspaper firm in Moscow, and the record shows that they had it done outside of the state, and the law certainly does not make the officer a criminal if the one to whom he let the contract had the printing done outside the state.

Counsel for the state contend that said sections of the code do not provide that the citizens of Idaho and citizens of other states may not deal freely with respect to their private business, even though that be printing, and also contend that said sections do not in any manner provide that citizens of other states cannot be awarded contracts for public printing, but that the printing must be done in the proper county. Requiring the printing to be done in a certain locality grants to the local printer an advantage over a printer of another state, and it grants the local printer an immunity and a privilege which is not granted to a citizen of another. It certainly requires child-like faith and simplicity to believe that requiring the printing to be done in a certain place where the local printer has a plant is not a discrimination against one who has a plant at another place. The legislature might just as well require the paper of which public records and documents are made to be manufactured within the state as to require the printing to be done there, as the manufacturing of the paper and the printing represent and require capital and labor. Said sections are shallow pretenses of requiring something to be done that is prohibited by the federal constitu-

tion, and is also a great burden on the taxpayer by granting a monopoly to a very few.

In the majority opinion some stress is laid on the fact that the state is a sovereign and may require its officers to enter into any kind of a contract it pleases in regard to the purchase of supplies for the several counties of the state, and because of such sovereignty, may require any work connected with such contract to be performed in a particular place. Idaho is a sovereign state, but the legislature is not the state nor the sovereign. It is the servant of the people and not their master. There are certain limitations placed by the constitution on the otherwise plenary power of the legislature in legislative matters. The people have reserved some rights by positive prohibitions contained in the constitution and others by clear implication, and by sec. 21, art. 1, of the constitution, the people have declared that the enumeration of the rights made in said article 1 shall not be construed to impair or deny other rights retained by the people, and one of these rights retained by the people is that the legislature shall not enact laws for the conduct of the business of the state in making purchases for the counties of the state that will create a monopoly or trust and require the people to pay much more for county printing and supplies than they would otherwise have to pay and thus oppress the taxpayer by granting special favors or privileges to the few, as the cost of printing and public records amounts to thousands of dollars every year to the several counties of the state. When the state or county enters the field for the purchase of commodities such as are required for the several officers of the state and county, they should be held to the same rules of common honesty and fair dealing in the expenditure of the people's money as are citizens in their transactions with each other. The provisions of said sections of the code are not only repugnant to the principles of fair dealing between the counties and the citizens of this state and of the United States, but clearly impinge on the provisions of said section of the federal constitution and grant a special privilege to a very few people and in effect deny it to the many, as every citizen of the state is

barred from procuring such contracts unless he has a printing plant in the state where such printing can be done, or has the printing done within the county from which the contract is obtained.

But it is contended that such printing must be done for the county at the same charge usually made to private individuals "for the same kind and quality of work," and that prevents excessive charges for county printing. That expression in said section 1476 which provides that the charge for such printing, etc., shall not be "in excess of the charge usually made to private individuals for the same kind and quality of work," means nothing, as no private individual has such books and records made as are required by county officers. The statute says, "the same kind and quality of work." What private individual has a county warrant book or the books required by law to be used by the county assessor printed? That provision is simply thrown in to make the statute appear fair on its face and to indicate to the superficial and thoughtless that the county is not required to pay any more for such printing than private individuals are required to pay for printing they have done. As no private individuals have any such printing done, there is no standard by which such prices may be governed.

I refer to this matter only to show that the clear intent and purpose of this legislation was to discriminate, not only between citizens of this state, but citizens of the United States, and thereby deprive them of immunities and privileges of contracting prohibited by said sec. 1, art. 14, of the federal constitution.

There appearing no legal cause for the imprisonment of the petitioner, he ought to be discharged and given his liberty.