**TEXAS HIGHWAY COMMISSION et al.,**
Petitioners,

v.

**TEXAS ASSOCIATION OF STEEL IMPORTERS, INC., et al., Respondents.**

No. A–9515.

Supreme Court of Texas.

Nov. 6, 1963.

Rehearing Denied Dec. 11, 1963.

Waggoner Carr, Atty. Gen., H. Grady Chandler, Asst. Atty. Gen., Austin, for petitioners.

William B. Dazey, Houston, for respondents.

NORVELL, Justice.

Article 6674h, Vernon's Ann.Tex.Stats. provides in part that:

"All contracts proposed to be made by the State Highway Department for the improvement of any highway constituting a part of the State Highway System or for materials to be used in the construction or maintenance thereof shall be submitted to competitive bids."

On March 28, 1960, the Texas Highway Commission passed its Minute Order No. 48,644 which reads as follows:

"All construction contracts, beginning with the January 1961 letting, shall include a provision that materials furnished under such contracts shall be manufactured in the United States, its territories and possessions. It is further understood and directed that where finished construction material is manufactured in a United States or territories mill it will be considered as a domestic product and will be acceptable under the terms of this Order provided all other requirements of the specifications are met."

The Court of Civil Appeals has held that Minute Order No. 48,644 is void because it is contrary to the provisions of Article 6674h above quoted. See 364 S.W.2d 749. The effect of the order would be to eliminate from the field of bidders upon highway construction contracts all those who owned or intended to acquire foreign materials and use them in carrying out highway construction contracts. Quite obviously the field of material suppliers would be drastically reduced. For example, it is shown without dispute that during the first seven months of the year 1960, the year in which the anti-foreign order was passed, forty-four per cent of all reinforcing steel and ninety-five per cent of all prestressed wire strand used in Texas highway construction was manufactured outside the United States. As an incidental matter, it was admitted that all the foreign materials used had passed the same tests and met the same specifications as their domestic counterparts and that no instance of a failure of imported materials used in highway construction was known to the Department. If the suppliers in one field of materials, such as steel, will be reduced by approximately fifty per cent, it seems obvious that the clear purpose for which Article 6674h was enacted is being circumvented.

It is stated by McQuillin that where the subject matter of the contract is not a monopoly, but where there are several

manufacturers who produce a certain article or where the material can be secured from two or more different localities, "it is held in nearly all the decisions that bidding cannot be restricted to bids on an unpatented article manufactured by a particular firm or *material from a particular locality.*" (Emphasis supplied.) 10 McQuillin Municipal Corporations, 3rd Ed., Sec. 29.49, pp. 304–5. If the Highway Commission could (without express statutory authority) restrict the locality from which it would accept manufactured materials, it could as well restrict such materials to those manufactured within the State of Texas or any particular county within the state. We are not here concerned with restrictions which could be imposed by the Congress of the United States or the Legislature of the State of Texas but with the order of an administrative authority which must act in accordance with and not contrary to the acts of the legislative branch of government. Had the Legislature proscribed foreign materials, we would have an entirely different question. There might be some constitutional objection to such a statute, but in the present case the Legislative decision is one favoring free and unrestricted bidding.

A number of cases hold that provisions in an ordinance or an administrative order restricting hours of labor and providing that no aliens may be used on public improvements are invalid. Such restrictions have been avoided on both constitutional and statutory grounds. Undoubtedly some of the cases construing various constitutional provisions with reference to restrictions on the hours of labor would not be followed today. Texas has statutes relating to such matters which are applicable to highway construction. Article 5165, Vernon's Ann.Tex.Stats. See, Scott v. Vilbig Const. Co., Tex.Civ.App., 140 S.W.2d 874, no wr. hist. However, aside from any constitutional question that may be involved, it seems that a nonstatutory restriction in the form of an ordinance or administrative order restricting employment to native and naturalized Americans is invalid because it is contrary to a statute providing for competitive bids. Glover v. People ex rel. Raymond, 201 Ill. 545, 66 N.E. 820; Taylor v. City of Philadelphia, 261 Pa. 458, 104 A. 766. Cf. Bohn v. Salt Lake City, 79 Utah 121, 8 P.2d 591, 81 A.L.R. 215, wherein it appeared that a state statute provided that in the employment of labor upon public works, preference should be given to citizens of the United States and those having declared their intention to become citizens and it was held that the City could not restrict the employment preference to heads of families who were residents of Salt Lake City.

The purpose and intent of competitive bidding ordinances and statutes are well stated in Sterrett v. Bell, Tex.Civ.App., 240 S.W.2d 516, 520 (no wr. hist.) wherein it was said:

> " 'Competitive bidding' requires due advertisement, giving opportunity to bid, and contemplates a bidding on the same undertaking upon each of the same material items covered by the contract; upon the same thing. It requires that all bidders be placed upon the same plane of equality and that they each bid upon the same terms and conditions involved in all the items and parts of the contract, and that the proposal specify as to all bids the same, or substantially similar specifications. Its purpose is to stimulate competition, prevent favoritism and secure the best work and materials at the lowest practicable price, for the best interests and benefit of the taxpayers and property owners. There can be no competitive bidding in a legal sense where the terms of the letting of the contract prevent or restrict competition, favor a contractor or materialman, or increase the cost of the work or of the materials or other items going into the project."

In Taylor v. City of Philadelphia, 261 Pa. 458, 104 A. 766, the Supreme Court of Pennsylvania was concerned with the validity

of ordinances of the City of Philadelphia which in effect provided that "in all contracts * * * for the construction of public buildings, * * * it shall be specified that the work of cutting and preparing (building) stone for use shall be done in Philadelphia."

The two lowest bidders submitted alternative bids. The bid of Fuller & Company was $2,570,000, subject to a deduction of $155,000 if the provisions of the ordinances as to the Philadelphia preparation of building stone were eliminated. Gill and Sons submitted a bid of $2,535,000 with a $110,000 reduction if the Philadelphia stone preparation requirements were eliminated. The Gill bid was accepted despite the fact that the Fuller bid was lower if the requirement as to place of cutting and preparing the building stone be eliminated. Taylor, as a taxpayer, sought to enjoin the execution of the proposed contract with Gill and Sons. The Supreme Court held that a purported legislative enactment which sought to authorize the insertion of such restrictive clauses in municipal ordinances was invalid because it was a species of special legislation not permitted by the Pennsylvania constitution. The Court then said, "The act of 1917 (above mentioned) being eliminated, it remains to consider the validity of the ordinances themselves. * * * [T]he only question is whether the ordinances violate the provisions of the Act' * * * requiring all work and materials furnished to the city under contracts to be let to the lowest responsible bidder."

The Court made clear the distinction between a statute,—an expression of a higher legislative authority—and an ordinance. It then pointed out that, "[a]n act of the Legislature can, of course, be modified by the Legislature itself," but this modification cannot be effected by City ordinance nor, (it would follow) by the order of an administrative body. The Court concluded by saying: . . . . . V . . . .

"No case has been found which is direct authority to sustain the validity

of municipal ordinances such as are here in question where the effect is to conflict with an express statutory provision requiring contracts to be let to the lowest responsible bidder. That the cost here has been increased because of the ordinances cannot be disputed in view of the difference in the bids of both contestants. From what has been said the judgment of the court below must be reversed."

See also, 10 McQuillin, Municipal Corporations, 3rd Ed., Sec. 29.30, p .268.

Undoubtedly the Minute Order is violative of the competitive bidding law, unless it can be supported upon the thesis asserted by the Attorney General, namely, that the Commission found that foreign steel is sometimes rusty, that it is sometimes improperly or defectively threaded, that it is often difficult to test foreign materials at the place of manufacture, that sometimes foreign steel is improperly marked, and that for these reasons a rejection of substantial amounts of foreign products at the jobsite takes place.

All of these matters relate to quality of materials and convenience of the employees of the State Highway Department. As pointed out by the respondents, the order itself makes no effort to provide definite and objective physical and chemical standards which must be met by the contractor insofar as materials are concerned. The order does not say that steel which is rusty, improperly threaded or of substandard quality shall not be used in carrying out any highway contract. The proscription relates to "foreign materials."

It is admitted that prior to the passage of the order, substantial amounts of foreign steel were used in highway construction and that so far as the Highway Department knows there have been no structural failures resulting from the use of foreign steel. There is no showing that the inspection processes of the Department have failed to detect the use of defective ma-

terials. No effort was made to trace the steel which had caused some trouble and resulted in an abnormal amount of rejections to any particular steel producing area or company. Steel from Sweden, England, West Germany, Japan and other steel producing countries having commercial relations with the United States are dumped into one common lot, labelled "foreign" and thus proscribed.

While the State of Texas in building highways through its Highway Department is acting in a proprietary rather than a sovereign capacity insofar as foreign commerce is concerned, it is undoubtedly operating in an area largely controlled by agreements and treaties negotiated by the central government. While this record will not support a finding that the Commission is attempting through indirection to invade the field of foreign commerce regulation and grant a preference to domestic manufacturers over their foreign counterparts, it is nevertheless suggested that if the true basis of the order and the results sought to be obtained thereunder are the securing of quality products for highway construction purposes, as the Department's witnesses say,—then, that result should be secured by the use of direct rather than indirect means. No one questions the power and authority of the Commission to specify the physical and chemical standards for construction materials which are to be used in Texas highway construction. If the Commission desires that no rusty steel be used, it may say so. Matters of quality should be fixed by quality specifications and not by proscriptions as to localities of manufacture or fabrication. Indirection should be avoided. If an order be one designed to secure quality products in highway construction then it should be couched in the terms of physical and chemical specifications, so that one contending that the order is unreasonable or arbitrary may attack it directly, rather than being called upon to meet evidence of a nature not suggested nor comprehended by the wording of the order. Why should not the term, "steel", free from rust" be used instead of "domestic steel" if that is the quality that is desired in re-enforcing materials used in highway construction?

It is wholly unsound to say that as the competitive bidding statute has for its purpose the securing of the best work and materials at the lowest practicable price, no cause of action is shown unless it demonstrated that as a result of the restrictive order an actual rise in material costs has taken place. Many factors enter into the cost of materials. The Legislature has in effect declared that open bidding contributes to the lowering of costs while restrictive bidding tends to an increase in costs. The Legislature has said what shall be done in the situation and impliedly said what shall not be done. Noncompliance with the mandatory statutory procedures cannot be excused by blandly contending that no one was actually hurt by the law violation. One might as well argue that as the policy of the law against murder is the protection of society, the specific proscription, "Thou shalt not kill" could be disregarded upon a showing that actually society had been protected by the timely removal of the deceased as a member thereof.

The question of the necessity of proving actual harm as a prerequisite for relief was considered by the Supreme Court of Illinois in Glover v. People ex rel. Raymond, 201 Ill. 545, 66 N.E. 820 in which a property owner resisted the collection of a special assessment against his property upon the ground that the contractual restrictions insisted upon by the City of Chicago in letting contracts for special improvements were contrary to the statute providing for competitive bidding. The Court in upholding the property owner's contention quoted from the earlier case of McChesney v. People ex rel. Raymond, 200 Ill. 146, 65 N.E. 626, as follows:

"The contract is to be awarded to the responsible bidder offering to do the work for the lowest sum, and any provision tending to increase the cost, and

make the bids less favorable to the public and the property owners, is against public policy, illegal, and void. * * * Such a provision or restriction in a competitive bidding is unlawful and against public policy, and this is conceded by counsel for appellee. They insist, however, that, to enable one whose lands have been assessed to pay for an improvement to avail himself of such an objection, he must show that the existence of the provision has increased the cost of the work, and this must be a definite showing of a financial injury to him, in dollars and cents. That is not the rule. The law entitles a property owner to the security afforded by its provisions, and it is sufficient for him to show that he has been deprived of the protection which the law gives him, of having bids made upon a lawful basis, and free from restrictions likely to produce a result detrimental to his interests. It would certainly be difficult, if not impossible, to prove in every instance that an illegal limitation worked unfavorably, or the amount of injury, in dollars and cents, resulting from it. The property owner is not obliged to show in each instance that he was prejudiced by unlawful restrictions and disregard of the law, but it is for the authorities seeking to impose the burden upon his lands to prove a substantial compliance with all of these provisions designed for his benefit. It would be just as reasonable to insist that if the requirements of competitive bidding were disregarded, and the work done by hiring laborers by the day, the property owner must be able to show that the price was not reasonable, or that the work was done at a greater expense than it would have been if the law had been complied with. It is a material and important right of the property owner that there shall be free and open competition, unrestricted by illegal and unconstitutional provisions, the natural tendency of which would be to increase the cost of the work;

and it is undeniable that the clauses in question in this case lay down rules which would naturally increase such cost, and be detrimental to the public."

This is a sound rule which should be followed, although there are authorities which are contrary thereto. It seems, however, that even under a number of cases following a contrary rule as to the showing of actual harm, the burden rests upon one seeking to recover despite an admitted violation of the statute to demonstrate that no harm could have resulted to the plaintiff. For example, in Pasche v. South St. Joseph Townsite Company, 190 S.W. 30, the Kansas City Court of Appeals held that while ordinarily a provision restricting the construction of a public improvement to brick manufactured in Missouri would render a special tax invalid, it would not have such effect when "it was admitted that brick manufactured in (Missouri) could be purchased for a less price than that manufactured outside the state." The facts of this case do not bring it within the Missouri rule as there is no showing that domestic materials are less costly than foreign materials.

Once the view be adopted as it must under the record before us, that the Minute Order is void because it is contrary to the competitive bidding statute, there can be no basis for saying that the disputed order was authorized by law. It was wholly nugatory and hence the present proceeding cannot be classed as a suit against the state. United States v. Lee, 106 U.S. 196, 197, 1 S.Ct. 240, 27 L.Ed. 171; State v. Epperson, 121 Tex. 80, 42 S.W.2d 228; Cobb v. Harrington, 144 Tex. 360, 190 S.W.2d 709; State v. Lain, 162 Tex. 549, 349 S.W.2d 579.

The respondents as plaintiffs in the District Court brought this suit for a judgment declaring Minute Order No. 48,644 to be invalid, illegal, void and of no lawful effect. Said respondents are resident citizen property taxpayers of the State of Texas or the representatives of such property tax-

payers. Some of them are owners of imported foreign manufactured products suitable for highway construction purposes. All of them are actively engaged in or interested in the sale and use of imported manufactured products. As this is not a suit against the State, such parties clearly have the right and litigable interest to have the challenged Minute Order declared null and void. The order is clearly void for the reasons stated and the judgment of the Court of Civil Appeals so holding should be affirmed. It is accordingly so ordered.

GRIFFIN and STEAKLEY, JJ., dissenting.

WALKER, J., not sitting.

GRIFFIN, Justice (dissenting).

I would hold the Highway Commission had the power and authority to pass Minute Order 48644, and that this is a suit against the state. I would, therefore, dismiss this cause.

The Legislature, in creating the Highway Commission, provided as follows:

Article 6663: "The administrative control of the State Highway Department * · * * shall be vested in the State Highway Commission * * *." All references to statutes in this opinion are to Vernon's Texas Civil Statutes, unless otherwise indicated.

Article 6665: "* * * They [the Commission] shall formulate plans and policies for the location, *construction* and maintenance of a comprehensive system of State highways and public roads. * * *" (Emphasis added.)

Article 6666: "The Commission shall establish and make public proclamation of all rules and regulations for the conduct of the work of the [State Highway] Department as may be deemed necessary, not inconsistent with the provisions of law. * *"

Article 6667: "* * * It [the Department] shall investigate and determine the methods of road construction best adapted to the different sections of the State, and shall establish standards for the construction and maintenance of highways, bridges and ferries, giving due regard to all natural conditions and to the character and adaptability of road building material in the different counties."

Article 6674k: "The State Highway Commission shall prescribe the form of such contracts [for work on state highways and public roads] and *may include therein such matters as they may deem advantageous to the State. * * *"* (Emphasis added).

In the case of Robbins v. Limestone County (1925), 114 Tex. 345, 268 S.W. 915, this court said:

"The establishment of public highways being primarily a function of government belonging to the state, the right to establish them resides primarily in the Legislature, and, in the absence of constitutional restrictions, the Legislature may exercise that right direct or delegate it to a political subdivision of the state, or to such other agency or instrumentality, general or local in its scope, as it may determine. * * * The Legislature may exercise possession of public roads and control over them, by and through such agencies as it may designate." 268 S.W. 918(5) (Citing authorities.)

Also, this court said:

"We do not deem it necessary to state the provisions of the highway statutes. They do, of course, create an agency in which are vested powers to formulate and execute plans and policies for the location, *construction and maintenance* of a comprehensive system of state highways and public roads." 268 S.W. 2d col. p. 920. (Emphasis added.)

In the case of Nairn et al. v. Bean et al. (1932), 121 Tex. 355, 48 S.W.2d 584, wherein Nairn and others brought suit against the Highway Commission, its individual members, the County Judge and County

Commissioners to enjoin the relocation of a state highway, this court said:

"The effect of the present statute (6663 et seq.) on the subject is to vest administrative control of all public roads which might be a part of the state highway system in the state highway department, with respect to the * * * relocation, improvement, construction * * * thereof. Whatever said department may do in the premises, in the exercise of an honest discretion, must be respected when untainted by fraud and unassailed on account of accident or mistake occurring in their performance, or such abuse of discretion as under the authorities would avoid the same." (Citing authorities).

See also Texas Highway Commission et al. v. El Paso Building and Construction Trades Council (1950), 149 Tex. 457, 234 S.W.2d 857(1).

In Johnson v. Ferguson (1932), Tex.Civ. App., 55 S.W.2d 153, writ dismissed (18–22), the court said:

"The highway department is one of the most important departments in the state government. * * * It would probably be difficult to find a citizen of the state who has not a direct concern in the affairs it administers, and this is certainly true as regards taxpaying citizens. To the members of the commission and in large measure to its chief engineer are intrusted responsibilities of outstanding importance. To meet these responsibilities they are invested with a wide discretion. This is of necessity so from the very nature of their duties. To properly discharge such duties they would perforce be required to make careful investigation from all competent and reasonably available sources in determining the bases for their action and for estimates from which to ascertain the bounds of their authority. As public officials they are presumed to exercise their

authority and perform their duties honestly, conscientiously, and efficiently."

The above cases show that the Legislature has established the Highway Commission and given it full authority to carry out the duties imposed by the Constitution to establish a system of public roads.

Paraphrasing what we said in Haden Co. v. Dodgen (1958), 158 Tex. 74, 308 S.W.2d 838 at p. 842, 2nd col.: Power to construct public highways is conferred by Arts. 6663, et seq., Revised Civil Statutes, upon the State Highway Commission. There is no statutory provision governing or limiting the manner in which this power may be exercised, save as to competitive bidding. So far as the statutes are concerned, so long as contracts are let by competitive bidding, the Commission may prescribe the kind and character of materials to be used in constructing and maintaining the public highways. The Commission's action in prescribing materials to be used in the construction of our public roads is the selection and decision of the state.

I will now discuss whether or not the Commission's order violates Art. 6674h requiring that road contracts be let under competitive bidding procedure.

Respondents contend that it is not within the power of the State Highway Commission to pass Minute Order No. 48644, because it violates the provisions of Article 6674h requiring competitive bidding in the letting of highway construction contracts.

In discussing what constitutes competitive bidding under the charter provisions of the City of Dallas, this court said:

"Two forms of competition may exist. One is secured by calling for bids on only one kind of material for the work, which is a competition among bidders on the same thing. The other is secured by calling for bids on several kinds of material, any one of which is suitable for the work; this form brings bidders on different things in competition with each other. The

latter kind of competition includes, it seems plain, the former." (Citing authorities). Vilbig Bros. v. City of Dallas (1936), 127 Tex. 563; 91 S.W.2d 336(5), rehearing overruled 127 Tex. 563, 96 S.W.2d 229.

The court then concludes that the specifications in question which include materials patented, materials which can be furnished by only one bidder, and materials which can be furnished by many bidders are valid and provide for competition, unless ipso facto calling for bids on a patented article voids the bidding. The court quotes from 3 McQuillin: Municipal Corporations (2d Ed.) § 1299 to the effect that even though a patented article or process is the only one on which bids are asked, *the letting is not void so long as there is competition among those furnishing such patented article or process.* (Emphasis added.)

The case of Sterrett v. Bell (1951, Tex. Civ.App.), 240 S.W.2d 516 (5, 6), no writ history, defines competitive bidding as follows:

> "'Competitive bidding' requires due advertisement, giving opportunity to bid, and contemplates a bidding on the same undertaking upon each of the same material items covered by the contract; upon the same thing. It requires that all bidders be placed upon the same plane of equality and that they each bid upon the same terms and conditions involved in all the items and parts of the contract, and that the proposal specify as to all bids the same, or substantially similar specifications."

The Supreme Court of Iowa in the case of Iowa Electric Light & Power Co. v. Incorporated Town of Grand Junction et al. (1933), 216 Iowa 1301, 250 N.W. 136(3), has defined the term "competitive bidding" as used in the Iowa Statutes regulating public improvements as, "Competitive bidding means that all contractors make bids based upon the same or at least substantially similar specifications."

The Supreme Court of Oklahoma, in the case of Flynn Construction Co. v. Leininger (1927), 125 Okl. 197, 257 P. 374, 377, has said:

> "* * * [Y]et they [the court decisions] are all in substantial harmony on the abstract proposition that in order that bids may come clearly within the meaning of the term 'competitive,' they must be upon a common standard, a common basis, upon the same thing, the same subject-matter, the same undertaking."

To the same effect is the case of Leininger v. Ward (Okla.Sup.1927), 126 Okl. 114, 258 P. 863.

In defining the term "competitive bidding," in the case of State Highway Commission of Kentucky v. King et al. (1935), 259 Ky. 414, 82 S.W.2d 443, 450, the court quotes from the case of State Highway Commission v. Veiling, 230 Ky. 381, 19 S.W.2d 967, as follows:

> "'Competitive bidding requires that all bidders be placed on a plane of equality, and that they bid upon the same terms and conditions.'"

The Supreme Court of Delaware in the case of Wilmington Parking Authority v. Ranken (1954), 34 Del.Ch. 439, 105 A.2d 614, 631 (20–22), has stated that the term "competitive bidding" as used in the law applicable to the letting of public contracts requires due advertisement and the giving of an opportunity to bid, and contemplates a bidding on the same undertaking upon each of the same material items covered by the contract, and it requires that all bidders be placed upon the same plane of equality and that they each bid upon the same terms and conditions involved in all the items and parts of the contract, and that the proposals specify as to all bids, the same or substantially similar specifications.

The record in this case shows that there are many suppliers of domestic steel and that there is great competition among the

domestic steel dealers; that since the adoption of Minute Order 48644 the price of steel furnished for highway construction work is lower than prior to the adoption of this order and when imported steel was being used. The record also shows that the Highway Commission keeps a check on the cost of steel, and that, if Minute Order 48644 results in higher steel prices, the Commission will review the matter and change Order 48644.

The case of McChesney v. People, ex rel. Raymond, 1902, 200 Ill. 146, 65 N.E. 626, quoted by the majority as authority for the fact that this Minute Order under consideration ipso facto violates Art. 6674h, Vernon's Texas Civil Statutes, begins, " * * any provision tending to increase the cost, and make the bids less favorable to the public and the property owners, is against public policy, illegal, and void. * * *" It is this reasoning upon which the majority opinion rests its conclusion that Minute Order 48644 is invalid. This view is the minority view held by only the Courts of Pennsylvania, Illinois, Utah and New York.

The rule adopted by a majority of the states passing upon this is stated in Ebbeson v. Board of Education, etc., 18 Del.Ch. 37, 156 A. 286 (1931), as follows:

"But even under that view, the courts adopting it say that whether the conditions imposed do violate the statute is to be determined, not by a mere inspection of the condition, but by whether or not its actual operation in practice does in fact increase the costs. In other words, whether the condition stands or falls is a question of fact; it does not carry its own prima facie condemnation. For instance in St. Louis Quarry & Construction Co. v. Von Versen, 81 Mo.App. 519, and in Taylor v. Philadelphia, 261 Pa. 458, 104 A. 766, the condition was found as a matter of fact to cause an increase in cost and therefore was held invalid under a statute requiring the work to be let to the lowest responsible bidder;

whereas in Allen v. Labsap, 188 Mo. 692, 87 S.W. 926, 3 Ann.Cas. 306, the condition was found not to effect an increase in cost and therefore was not invalid." 156 A. 288.

On the question of whether or not the adoption of Minute Order 48644 increased costs, there is no dispute about the fact that since the adoption of this order in 1960 the cost to the state, as reflected by the contractors' bids, has decreased, and that the highway contracting business has continued most competitive.

The uncontradicted testimony of Mr. Petry, Chairman of the Highway Commission, was that from 1958 to 1960 (date of entry of order) there was no difference in cost of steel on purely state-financed projects when foreign materials were excluded, and federally-aided projects, where foreign materials were not excluded.

In answer to one of the issues submitted to the jury trying this case, the jury found: That the evidence did not show the order (No. 48644) resulted in increased cost of such materials (steel) to the State of Texas.

Thus the great bogey-man of the majority that increased costs will result is shown by the testimony given and the jury finding to be just a figment of the imagination and not a fact.

The view of the majority of the states which have passed on the point is: Ex parte Gemmill (1911) 20 Idaho 732, 119 P. 298, 41 L.R.A.,N.S., 711—county printing must be done within the State of Idaho; Hersey v. Nelson (1913) 47 Mont. 132, 131 P. 30—printing must be done within the state; Pasche v. South St. Joseph Town-Site Co. (1916, Mo.Ct. of Appeals), 190 S.W. 30—bricks used in paving must be manufactured in the state; St. John v. King (1933—hearing denied by Sup.Ct.) 130 Cal. App. 356, 20 P.2d 123—California product required in paving; State, ex rel. Collins v. Senatobia Blank Book & Stationery Co. (1917) 115 Miss. 254, 76 So. 258—non-residents or those not having a printing plant

within the state prohibited from bidding on county printing contracts; Knight v. Barnes (1898), 7 N.D. 591, 75 N.W. 904—all county printing shall be done in the state, and if practicable in the county ordering the same. (The question of competitive bidding was also raised in this case, but summarily dismissed). City and County of Denver v. Bossie (1928) 83 Colo. 329, 266 P. 214—Colorado materials to be used in all public works; Wilson v. Board of Commissioners of Warrick County (1923) 79 Ind.App. 250, 137 N.E. 783—provision for clean Ohio River gravel; Rote v. Bexar Co. Water Control & Imp. Dist. (1936, Tex.Civ.App.), 91 S.W.2d 1095, writ dismissed—holding district directors in their discretion could limit their call for bids to clay pipe without violating competitive bidding statute.

The record shows that Mr. Herbert Petry, Chairman of the Highway Commission, testified that in adopting this policy, the Commission gave consideration to matters of quality, uniformity, price, testing, and maintaining reliable sources of supply, particularly in times of war. He stated that the Commission had received numerous complaints concerning foreign products, not only from the contractors, but from fabricators as well; that in some cases, sizes of foreign steel would be different from those shown by the markings thereon; that they would be rusty, and the threads would not work right; and if not rusty, they would come in covered with some sort of solution that would have to be removed. He testified that it was difficult for the Department to test foreign materials at the source of manufacture. He testified that testing at the source of manufacture was important; that the Department employs two private companies to do such testing at the source; that where material was not so tested at the source of manufacture, and testing on the job site resulted in a rejection of materials, this produced delays and inefficiency in highway construction projects. He pointed out that altered mill reports received by the Department on foreign steel created problems as to testing, as to quality, and as to uniformity and reliability of the products. He testified that staff reports to the Commission reflected a lack of uniformity in the quality of foreign steel—even in a given batch or bundle of it—which adversely affected the reliability of the sample-testing methods used by the Department. Mr. Petry summarized the Commission's position in adopting the Minute Order in these words:

"From the experience we have had, from the reports of staff, and for other reasons that I have enumerated here, and feeling that we were charged by law with the construction efficiently of the highway system, we determined that the passage of this minute order was to the best interest of the Texas Highway Department in its responsibility to wisely expend the tax dollar."

Having held that the Commission had the power and authority to pass Minute Order No. 48644, and that such action was not arbitrary nor an abuse of discretion, it must follow that this is a suit against the State of Texas, and should be dismissed. Griffin v. Hawn (1960), 161 Tex. 422, 341 S.W.2d 151(1); W. D. Haden Co. v. Dodgen (1958), 158 Tex. 74, 308 S.W.2d 838; Larson v. Domestic & Foreign Commerce Corp. (1948), 337 U.S. 682, 69 S.Ct. 1457, 93 L.Ed. 1628.

I would dismiss this cause.

STEAKLEY, J., joins in this dissent.