

# Office of the Attorney General
## State of Texas

**DAN MORALES**
ATTORNEY GENERAL

June 9, 1993

Honorable John W. Segrest
Criminal District Attorney
McLennan County
219 North 6th Street, Suite 200
Waco, Texas 76701

Opinion No. DM-226

Re: Whether section 381.004 of the Local Government Code creates an exemption to competitive bidding requirements and related questions (RQ-498)

Dear Mr. Segrest:

On behalf of McLennan County, you ask several questions which relate to a proposed policy entitled "Minority/Women-Owned Business Involvement Policy" which is currently under consideration by the McLennan County Commissioners Court.

The proposed policy has three major facets. First, in an effort to increase minority and women-owned business participation, it would establish a directory of such businesses and procedures to inform such businesses of contracting opportunities. Second, it would attempt to increase the use of minority and women-owned businesses by prime contractors by (i) incorporating a notice in bid packets that discrimination against such businesses is prohibited; (ii) requiring bidders to state how they intend to use such businesses; and (iii) requesting bidders to supply information regarding their past use of such businesses. The proposed policy states that "[n]othing in this section [regarding the competitive bidding process] shall be construed to constitute a restriction on who the contractor may hire or contract with in the performance of the contract. Nor does this provision seek to establish a quota." Third, with respect to purchases under $10,000.00 which are not subject to competitive bidding, the proposed policy would set a goal that one third of the county's contracts for such purchases be awarded to minority and women-owned businesses.

First, you note that in Attorney General Opinion DM-113 (1992), we considered whether the Dallas Independent School District ("DISD") was authorized to consider such factors as a bidder's location, compliance with DISD's Minority and Women Business Enterprise Contracting and Purchasing Program, and involvement with DISD, when evaluating the bidder's "responsibility." We concluded:

> The courts conclude that the legislature, in enacting competitive
> bidding statutes, has determined that the government's interest in
> obtaining the best work or product at the lowest practicable price is
> secured by requiring maximum competition for government

contracts. . . . A governmental body subject to a competitive bidding statute must act to promote the unmistakable legislative policy favoring unrestricted competition. . . . *Only the legislature may vary this policy by enacting exceptions to competitive bidding.* . . . A governmental body therefore may not adopt policies or issue bid solicitations or specifications that restrict competition unless such policies, solicitations, or specifications have a definite and objective relationship to matters of quality and competence *or are adopted pursuant to clear legislative authority.*

Attorney General Opinion DM-113 at 7 (1992) (emphasis added) (citing *Texas Highway Comm'n v. Texas Ass'n of Steel Importers, Inc.*, 372 S.W.2d 525 (Tex. 1963); Attorney General Opinion JM-712 (1987)). You further note that unlike DISD which is not statutorily authorized to deviate from strict competitive bidding criteria, the county is subject to section 381.004 of the Local Government Code.[1] You suggest, however, that the extent to which section 381.004 authorizes counties "to implement policies requiring bidders to submit evidence of socially responsible contracting practices . . . is *unclear.*" You ask whether section 381.004 creates an exception to competitive bidding requirements and whether the proposed policy is "legal."

---

[1]Section 381.004 of the Local Government Code provides in pertinent part:

> (b) To stimulate business and commercial activity in a county, the commissioners court of the county may develop and administer a program:
>
> . . . .
>
> (4) to improve the extent to which women and minority businesses are awarded county contracts.
>
> . . . .
>
> (d) A program established under this section may be designed to reasonably increase participation by minority and women-owned businesses in public contract awards by the county by establishing a contract percentage goal for those businesses.

Generally, counties are subject to competitive bidding requirements set forth under section 262.023 of the Local Government Code. Section 381.004 of the Local Government Code was adopted by the 71st Legislature as Senate Bill 24. Acts 1989, 71st Leg., ch. 1060, § 3, at 4307. Senate Bill 24 also amended section 262.024 of the Local Government Code which sets forth limited exemptions to the competitive bidding requirements of section 262.023 as follows:

> A contract for the purchase of any of the following items is exempt from the requirement established by Section 262.023 if the commissioners court by order grants the exemption . . . [including] *any work performed under a contract for community and economic development made by a county under Section 381.004.*

Local Gov't Code § 262.024(a)(10) (emphasis added).

We have reviewed the proposed policy you submitted with your opinion request and see no reason to consider the effect of section 381.004 on competitive bidding requirements, because it is not apparent to us that the proposed policy is inconsistent with competitive bidding. Unlike the DISD policy we considered in Attorney General Opinion DM-113, the proposed policy's provisions regarding the competitive bidding process do not appear to set forth any criteria which the county will consider in selecting bids. We note, however, that the determination whether a particular county policy is "legal" is beyond the purview of the opinion process. *See* Attorney General Opinion DM-121 (1992) at 1.

You also ask whether section 381.004 violates the equal protection clause of the fourteenth amendment of the United States Constitution. U.S. Const. amend. XIV, § 1. The United States Supreme Court considered the constitutionality of a "minority business utilization plan" adopted by the City of Richmond, Virginia in *City of Richmond v. Croson*, 488 U.S. 469 (1989). That plan required prime contractors awarded city contracts to subcontract at least thirty percent of the dollar amount of each contract to "minority owned business enterprises." A construction company challenged the plan, alleging that it was unconstitutional under the fourteenth amendment's equal protection clause. The court affirmed the judgment of a lower court that the plan violated the fourteenth amendment.

Although the justices were far from uniform in their approach, a majority of justices appears to have agreed that a plan of a governmental body to apportion opportunities on the basis of race is subject to strict scrutiny. *See Croson*, 488 U.S. at 498-508. Therefore, the governmental body must have a compelling state interest in enacting the plan, and the plan must be narrowly tailored to achieve that interest. *Id.* A majority of the court concluded that the City of Richmond had failed to demonstrate a compelling state interest because it had failed to show that it had enacted the plan to remedy past discrimination. *Id.*

Section 381.004 of the Local Government Code does not apportion county contracting opportunities on the basis of race. It merely authorizes counties to establish programs "designed to reasonably increase participation by minority and women-owned businesses in public contract awards by the county by establishing a contract percentage goal for those businesses." Local Gov't Code § 381.004(d). Therefore, we do not believe that section 381.004 violates the fourteenth amendment. The determination whether a particular county program authorized by section 381.004 violates the fourteenth amendment would require the resolution of factual matters, such as determinations regarding the county's reasons for adopting the program and the verity of those reasons, that are not amenable to the opinion process. Attorney General Opinion DM-121 at 1-2.

## S U M M A R Y

The determination whether a particular county policy is "legal" is beyond the purview of the opinion process. Section 381.004 of the Local Government Code does not violate the equal protection clause of the fourteenth amendment of the United States Constitution. The determination whether a particular county program violates the fourteenth amendment's equal protection clause would require the resolution of factual matters, such as determinations regarding the county's reasons for adopting the program and the verity of those reasons, that are not amenable to the opinion process.

Very truly yours,

**DAN MORALES**
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Attorney General for Litigation

RENEA HICKS
State Solicitor

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Mary R. Crouter
Assistant Attorney General